FILED

JAN 3 0 2018

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | Case No.: 18CR468-JLS |
|---|---|
| v. | **INFORMATION** |
| TROY AMUNDSON, | Title 18 U.S.C., Sec. 371– Conspiracy To Commit Bribery |
| Defendant. | |

The United States charges that, at all times relevant:

1. From May 2005 until May 2013, AMUNDSON was an active-duty Officer in the U.S. Navy, serving at the rank of Commander. From approximately July 2008 to September 2012, AMUNDSON was a Cooperation Afloat and Readiness Training ("CARAT") Exercise Officer and a Theater Engagement Manager for the Commander, Logistics Group Pacific, a U.S. Navy command based in Singapore. In those positions, AMUNDSON was responsible for organizing all aspects of several joint exercises between the U.S. Navy and its various foreign navy counterparts, as well as generally building and maintaining relationships between the U.S. Navy and its foreign exercise partners.

2. At all times, as an Officer in the U.S. Navy, AMUNDSON was a "public official" within the definition of 18 U.S.C. § 201(a)(1).

3. AMUNDSON, as an Officer in the U.S. Navy, had and was assigned various official duties, including, but not limited to those found in the United States Navy Regulations; Department of Defense Directive ("DoDD") 5500.07 (Standards of Conduct), DoDD

1 │ 5500.07-R (Joint Ethics Regulations), and supplements thereto,
2 │ including 5 C.F.R. Part 2625 (Standards of Ethical Conduct for
3 │ Employees of the Executive Branch), and 5 C.F.R. Part 3601
4 │ (Supplemental Standards of Ethical Conduct for Employees of the
5 │ Department of Defense); and Executive Order 12674 (Principles of
6 │ Ethical Conduct).

7 │     4.   Among many others, the official duties of Officers in
8 │ the U.S. Navy, like AMUNDSON, include (1) acquainting themselves
9 │ with, obeying and, so far as their authority extends, enforcing
10 │ the laws, regulations, and orders relating to the Department of
11 │ the Navy; (2) faithfully and truthfully discharging the duties of
12 │ their offices to the best of their ability in conformance with
13 │ existing orders and regulations and their solemn profession of the
14 │ oath of office (Article 1130); (3) requiring themselves to show a
15 │ good example of virtue, honor, patriotism, and subordination; to
16 │ be vigilant in inspecting the conduct of all persons who are
17 │ placed under their command; to guard against and suppress all
18 │ dissolute and immoral practices, and to correct, according to the
19 │ laws and regulations of the U.S. Navy, all persons who are guilty
20 │ of them; and take all necessary and proper measures, under the
21 │ laws, regulations and customs of the naval services, to promote
22 │ and safeguard the morale, the physical well-being and the general
23 │ welfare of the officers and enlisted persons under their command
24 │ or charge (Article 1131); (4) reporting as soon as possible to
25 │ superior authority all offenses under the Uniform Code of Military
26 │ Justice ("UCMJ") which come under their observation (Article
27 │ 1137); (5) complying with all directives issued by the Secretary
28 │ of Defense and Secretary of the Navy regarding the Standards of

1  Conduct and Government Ethics (Article 1110); and (6) reporting in
2  writing any fraudulent, collusion, or improper conduct by a U.S.
3  Navy contractor (Article 1115).

4      5.  To perform his duties, AMUNDSON held a "Top Secret"
5  clearance as a prerequisite to handling various types of
6  classified information.  Additional regulations prescribe the
7  official duties of U.S. Navy Officers in the handling of
8  classified information, including DoDD 5200.2-R, which requires
9  among other duties that individuals having access to classified
10  information must promptly report to their security office: any
11  unauthorized disclosure to any person of classified information or
12  of other information, disclosure of which is prohibited by
13  Statute, Executive Order, or Regulation (C2.2.1.5); the disregard
14  of public law, Statute, Executive Order, or Regulation (C2.2.1.7);
15  any criminal or dishonest conduct (C2.2.1.8); any acts of omission
16  or commission that indicate poor judgment, unreliability, or
17  untrustworthiness (C2.2.1.9); any vulnerability to coercion,
18  influence, or pressure that may cause conduct contrary to the
19  national interest (C2.2.1.11); and any acts of sexual misconduct
20  or perversion indicative of moral turpitude, poor judgment or lack
21  of regard for the laws of society (C2.2.1.17). Co-workers shoulder
22  an equal official duty to report when "they become aware of
23  information with potentially serious security significance
24  regarding someone with access to classified information" in a
25  sensitive position (C9.1.5).

26      6.  DoDD 5240.06 prescribes the official duties of
27  Department of Defense personnel, including AMUNDSON, related to
28  counterintelligence awareness and reporting.  In particular, DOD

1 | personnel must report certain enumerated contacts, activities,
2 | indicators, and behaviors as potential foreign intelligence entity
3 | threats against the DOD, its personnel, information, materiel,
4 | facilities, and activities or against U.S. national security.
5 | Mandatory reporting obligations inure to the following activities,
6 | among others: any improper handling or disclosure of classified
7 | information; attempts to entice co-workers into criminal
8 | situations that could lead to blackmail or extortion; attempts to
9 | entice DOD personnel into situations that could place them in a
10 | compromising position; and attempts to place DOD personnel under
11 | obligation through special treatment, favors, gifts, or money.

12 |     7.    Glenn Defense Marine Asia ("GDMA") was a corporation
13 | headquartered in Singapore, with operating locations in Japan,
14 | Thailand, Malaysia, Korea, Hong Kong, Indonesia, Australia,
15 | Philippines, and the United States.  GDMA's main business involved
16 | the "husbanding" of marine vessels, a service it had provided
17 | across the Seventh Fleet's area of responsibility (AOR) under
18 | various contracts with the U.S. Navy for over 25 years.  "Ship
19 | husbanding" involves the coordinating, scheduling, and direct and
20 | indirect procurement of items and services required by ships and
21 | submarines when those vessels arrive at port.  Examples of these
22 | items and services included, among others, tugboats; fenders; port
23 | authority or customs fees; security; food; fuel; water; trash
24 | removal; collection, holding, and transfer of liquid waste
25 | ("CHT"); and transportation, among many others.

26 |     8.    Leonard Glenn Francis, charged elsewhere, a citizen of
27 | Malaysia, was the owner, President and CEO of GDMA.  Francis
28 | utilized the email addresses Leonard.Glenn.Francis@gmail.com and

1   leonard@glennmarinegroup.com and in emails was referred to by the
2   following nicknames: "Lion King," "LK," and "Boss."

3       9.    The offenses described herein began or were committed
4   out of the jurisdiction of any particular district, and one or
5   more joint offenders was arrested within the Southern District of
6   California.

### COUNT ONE - Conspiracy (18 U.S.C. § 371)

8       10. The allegations in Paragraphs 1 through 9 of this
9   Information are hereby re-alleged and incorporated herein.

10      11. From in or about September 2012 to at least October
11  2013, on the high seas and out of the jurisdiction of any
12  particular district, defendant TROY AMUNDSON, a public official,
13  Leonard Glenn Francis, and others (1) knowingly and unlawfully
14  combined, conspired, and agreed to commit bribery, that is,
15  AMUNDSON, Francis, and others, knowingly agreed that, in return
16  for AMUNDSON being influenced in the performance of official acts,
17  and being induced to do and omit to do acts in violation of his
18  official and lawful duties, all as opportunities arose, (a)
19  Francis and others would directly and indirectly, corruptly give,
20  offer, and promise things of value to AMUNDSON, including but not
21  limited to entertainment expenses and the services of prostitutes,
22  and (b) AMUNDSON would directly and indirectly, corruptly demand,
23  seek, receive, accept, and agree to receive and accept these
24  things of value; and (2) AMUNDSON and Francis took overt acts in
25  furtherance of this conspiracy and to effect its unlawful object,
26  in violation of Title 18, United States Code, Sections
27  201(b)(1)(A) and (C) and 201(b)(2)(A) and (C).

28

- 5 -

1 | <center>OBJECT OF THE CONSPIRACY</center>

2 |     12.   It was the object of the conspiracy for AMUNDSON to use
3 | his position and influence in the U.S. Navy to advocate for and
4 | advance GDMA's interests, as opportunities arose, by, among other
5 | things, providing Francis and others with internal, proprietary
6 | U.S. Navy information.   In return, Francis and others would offer
7 | things of value to or on behalf of AMUNDSON, such as entertainment
8 | expenses and the services of prostitutes.

9 | <center>METHODS AND MEANS OF THE CONSPIRACY</center>

10 |     13.   In furtherance of this conspiracy, and to accomplish its
11 | object, the following methods and means were used, among others:

12 |     a.   AMUNDSON would demand, seek, receive, and accept
13 | things of value from Francis and others.

14 |     b.   Francis and others would offer and give things of
15 | value to or on behalf of AMUNDSON, including entertainment
16 | expenses and the services of prostitutes.

17 |     c.   In return for these things of value, AMUNDSON would
18 | use his position and influence in the U.S. Navy to advocate for
19 | and advance GDMA's interests, as opportunities arose.

20 |     d.   AMUNDSON would attempt to conceal the nature and
21 | source of the bribe payments that he received from Francis as well
22 | as the nature of the corrupt relationship by, among other things:
23 | using fictitious, private email accounts to communicate with GDMA;
24 | communicating with Francis via various methods and not others
25 | because he believed he was under surveillance by authorities;  by
26 | deleting all of his correspondence with Francis on a private email
27 | account after being interviewed federal criminal investigators;
28 | and by falsely referring to his corrupt relationship with Francis

<center>- 6 -</center>

1    and GDMA by code words and using coded language and other
2    mechanisms designed to obfuscate the true nature of their corrupt
3    relationship, including referring, during communications with
4    Francis, to his role in GDMA's "program" and his status as "a
5    small dog just trying to get a bone".

6                              OVERT ACTS

7          14.   In furtherance of the conspiracy and to effect its
8    object, the following overt acts, among others, were committed:

9          a.   On or about September 5, 2012, Francis paid for
10   dinner, drinks, transportation, karaoke, and the services of
11   prostitutes for AMUNDSON and other U.S. Navy officers at a
12   nightclub in Singapore.    Later in September 2012, Francis
13   exchanged several text messages with another U.S. Navy officer
14   arranging for another night of dinner and drinks, including with
15   AMUNDSON, among others.

16         b.   On or about November 28, 2012, AMUNDSON sent
17   Francis his personal email address, amundsontroy@yahoo.com.
18   Francis emailed AMUNDSON that same day saying, "Thanks for the
19   info received via [BlackBerry Messenger]".

20         c.   On or about December 20, 2012, Francis again paid
21   for dinner, drinks, karaoke, transportation, and the services of
22   prostitutes for AMUNDSON and several other U.S. Navy officers at a
23   nightclub in Singapore.

24         d.   On or about December 20, 2012, AMUNDSON gave
25   Francis a manila envelope containing confidential, proprietary
26   U.S. Navy information related to AMUNDSON's work on an upcoming
27   CARAT exercise.

28

1        e.   On or about January 21, 2013, Francis treated
2  AMUNDSON, another U.S. Navy officer, and their wives to a lavish
3  dinner and a night of gambling at the Marina Bay Sands casino in
4  Singapore.

5        f.   On or about February 15, 2013, AMUNDSON texted
6  Francis over WhatsApp that he had "some shit to pass [to Francis]
7  when we meet next" related to the U.S. Navy's oversight of GDMA's
8  husbanding contracts.

9        g.   On or about February 16, 2013, AMUNDSON sent
10  Francis WhatsApp messages, informing Francis that he would not be
11  able to contact Francis for several days because he feared he was
12  under surveillance: "Cannot use [BlackBerry Messenger], 100% sure
13  [I] am being monitored.  Douchebags."

14        h.   On or about March 6, 2013, AMUNDSON and Francis
15  exchanged several WhatsApp messages wherein AMUNDSON provided
16  Francis with updates related to the upcoming CARAT exercise in
17  Malaysia.

18        i.   On or about March 11, 2013, Francis asked AMUNDSON
19  over WhatsApp for port visit schedules.  AMUNDSON replied that he
20  would "get a feel for scheds tomorrow.  And later a feel for
21  better things."  Francis replied: "Copy[,] need a copy fr me[,]
22  fwd gmail."

23        j.   On or about March 12, 2013, AMUNDSON informed
24  Francis over WhatsApp, "Have some papers for you.  Scheds through
25  Dec."

26        k.   On or about March 20, 2013, AMUNDSON wrote to
27  Francis, arranging to provide Francis with internal, proprietary
28  U.S. Navy information:  "Handoff?... [M]y [friend], your program

1 | is awesome.   I [AMUNDSON] am a small dog just trying to get a
2 | bone… however I am very happy with my small program.  I still need
3 | 5 minutes to pass some data when we can meet up.  Cannot print."
4 | That night, Francis arranged the services of several prostitutes
5 | from Mongolia for AMUNDSON.

6 |      1.   On or about October 2, 2013, AMUNDSON deleted all
7 | of his correspondence with Francis on his amundsontroy@yahoo.com
8 | email account after being interviewed earlier that day by DCIS and
9 | NCIS investigators.

10 |   All in violation of Title 18, United States Code, Section 371.

11 |
12 | ADAM BRAVERMAN
     United States Attorney

13 | By:
14 |     MARK W. PLETCHER
        PATRICK HOVAKIMIAN
15 |     Assistant U.S. Attorneys

16 |
17 | SANDRA MOSER
     Acting Chief, Fraud Section

18 | Criminal Division

19 | By:   BRIAN YOUNG/
20 |     BRIAN R. YOUNG
        Assistant Chief
21 |     Fraud Section, Criminal Division

22 |
23 |
24 |
25 |
26 |
27 |
28 |